UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | No. |
| v. | |
| 535 BOXES OF COUNTERFEIT 3M 1860 AND 1860S FACE MASKS, *Defendant*. | |
| [CLAIMANT: Q2 SOLUTIONS, LLC] | June 28, 2021 |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, Leonard C Boyle, Acting United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil *in rem* action brought to enforce the provisions of 18 U.S.C. § 2323(a), which provides for the forfeiture of counterfeit property that is made or trafficked in violation of 18 U.S.C. § 2320.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 & 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is 535 boxes of counterfeit 3M 1860 and 1860S face masks ("Defendant Asset").

4. The Defendant Asset was seized within the jurisdiction of this Court.

5. On April 22, 2021, Q2 Solutions, LLC, 421 Simmons Road, Sellersville, PA 18960, via Franco Cabral, submitted an administrative claim of ownership to the Defendant Asset.

1

## BACKGROUND OF THE INVESTIGATION

### Q2 Solutions, LLC Sells Counterfeit PPE to TidalHealth

6. In or around December of 2020, law enforcement began investigating Q2 Solutions LLC ("Q2"), a company based in Sellersville, PA, for the sale of counterfeit personal protective equipment ("PPE"), to multiple healthcare facilities across the United States.

7. On November 19, 2020, TidalHealth, a healthcare provider in the Baltimore, Maryland area, purchased approximately 35,160 of what they believed to be 3M[1] 1860 respirators from Q2, for $164,502.00. TidalHealth had purchased the 3M N95 respirators from Q2 for use by Nanticoke Memorial Hospital, an entity operated by TidalHealth. On December 9, 2020, after wiring the payment to Q2 and receiving the masks, TidalHealth sent photographs of the masks to 3M to confirm their authenticity as some of the employees of the hospital had voiced concerns about the look, smell, and fit of the masks. 3M examined a sample of the masks that Tidal Health had purchased from Q2 and determined that while these masks bore the 3M logo, the masks were counterfeit, based upon the lot number and construction of the masks. 3M reported to TidalHealth that these masks did not meet the "fit" test as 3M respirators and would not provide the same protections.

8. On December 18, 2020, after receiving this information from TidalHealth, a representative from 3M notified Homeland Security Investigations National Intellectual Property Rights Coordination Center ("HSI") by electronic mail that TidalHealth had

---

[1] 3M (3M Innovative Properties Company) is an American corporation operating in the fields of industry, worker safety, US health care, and consumer goods.

purchased N95 respirators from Q2 believing that the masks were manufactured by 3M but were in fact counterfeit.

9. On December 23, 2020, TidalHealth provided HSI in Philadelphia with copies of its communications with Q2 related to the sale and purchase of PPE.  Summaries of these communications follow.

10. On or about November 9, 2020, Michelle Smith sent an email from a Q2 email account to TidalHealth which stated that Q2 had "3M 1860 & 1860s Masks" available and ready to ship.  The email contained a signature line that read "Michelle Smith Regional Manager Q2 solutions Cell:  XXX-XXX-9091."

11. On or about November 12, 2020, another email from Michelle Smith at the same email account was sent to TidalHealth which stated "Please see the attached quote for the 1860 & 1860 S.  Also attached are the photos of both mask styles with the lot and batch numbers."  This same email included a list of healthcare facilities that Q2 purported to do business with:  "We are working with the following systems – The Cleveland Clinic, SW General, UMass Memorial, Bay State, Virtua, Bassett Health, Columbia Memorial Hospital, *Stamford Hospital*. . . . . St Judes of TN, UNC Health Care . . . . . and Many others." [emphasis added]

12. On December 11, 2020, TidalHealth sent an email to Michelle Smith at Q2 to inform her that TidalHealth was putting all mask orders to Q2 on hold as they were awaiting verification from 3M regarding the authenticity of the masks after healthcare workers complained about the masks' smelling of "oil or a chemical."

13. Later, on December 11, 2020, Q2 sent an email reply to TidalHealth stating that Q2 was "going to get you the 3M certificate."  Attached to this reply was a report purported to be

from "SGS" regarding the authenticity of the masks.  However, the report from SGS contains a disclaimer that "SGS does not guarantee authenticity of any Brand/Trademark during visual assessment and quality inspection."

14. Also on December 11, 2020, TidalHealth sent an email to Michelle Smith at her Q2 email account stating that 3M had confirmed to TidalHealth that the 3M masks Q2 was selling were counterfeit.

15. On December 12, 2020 TidalHealth again emailed Q2 warning Michelle Smith that the 3M masks Q2 provided were counterfeit and that TidalHealth highly recommends that Q2 not resell these counterfeit 3M masks as there have been problems with the shape, fit, and smell of the masks.

16. On December 14, 2020, in response to TidalHealth's December 12, 2020 email, Q2 responded with an email from Marco Vitolo from his Q2 email account, which carried a signature indicating it was from the President of Q2, Marco Vitolo.  Q2's email contained a "3M Certificate and invoice," as well a request that TidalHealth fill another order with Q2.

17. After being advised of these emails and their content, law enforcement was able confirm that many of the representations in Q2's correspondence were false.  3M told law enforcement that the 3M Lot Code of 20018 that was shown on the Q2 sold respirators was documented in a published release as being counterfeit, and that the invoice and certification attached to the December 14, 2020 email were fraudulent. Law enforcement also determined that at least two of the healthcare providers Q2 identified as customers, St. Jude's Hospital of Tennessee, and UNC Healthcare of North Carolina, were not doing business with Q2.

18. Law enforcement also determined that even after Michelle Smith and Q2 were notified that they had supplied counterfeit masks to TidalHealth that could jeopardize the health and safety of health workers and the public, Q2 was attempting to sell more of these same masks to other health systems including an emailed solicitation to Bassett Health Network in New York on January 15, 2021, informing Bassett Health that Q2 had "N95 Masks (1870+, 1860, 1860S & more)" ready to ship.

### Q2 Solutions, LLC Sells Counterfeit PPE to Cleveland Clinic

19. On January 27, 2021, 3M sent law enforcement in Philadelphia a consumer complaint and fraud tip that it had received from the Cleveland Clinic related to Q2. 3M received this complaint on or about January 25, 2021.

20. 3M told law enforcement that the Cleveland Clinic approached it after having concerns about N95 respirators it purchased from Q2. 3M told law enforcement that it put a sample of these masks through its "fit test" and determined that the masks were counterfeit.

21. On January 28, 2021, Cleveland Clinic released a press release that stated "We were recently notified by a manufacturer that potential counterfeit N95 masks were in a small portion of our supply . . . . These masks were fraudulently branded and purchased through a third-party vendor."

22. On or about January 29, 2021, a representative of Cleveland Clinic told law enforcement that Cleveland Clinic had purchased approximately 400,000 N95 respirators from Q2 for approximately $1,780,000.00. Cleveland Clinic also told law enforcement that some of the 3M masks it had purchased from Q2 were issued for use on several high-risk COVID-19 wards at the Cleveland Clinic and that during the time that healthcare workers were

using these masks on these high-risk wards, several of these employees tested positive for COVID-19.

## Q2 Sells Counterfeit PPE to Stamford Health in Stamford, CT

23. On February 17, 2021, law enforcement in Philadelphia contacted law enforcement in Connecticut to request help regarding the investigation set forth above.

24. Law enforcement in Pennsylvania determined through its investigation that Q2 had potentially sent a shipment of counterfeit 3M masks to Stamford Health in Stamford, Connecticut and contacted Stamford Health about this situation.

25. Law enforcement in Connecticut, working in conjunction with Stamford Health, determined that Q2 had sold and distributed approximately 65,280 masks to Stamford Health.

26. Stamford Health located the masks that had not been distributed, removed from circulation any masks that had been distributed but not yet used, and stored the masks at its loading dock.

27. Law enforcement verified that the masks were counterfeit by using the 3M online guide for determining authentic 3M products.

28. A small but undetermined amount of the counterfeit masks had already been used by Stamford Health prior to law enforcement's contacting Stamford Health.

29. On March 15, 2021, law enforcement in Connecticut seized 534 boxes of masks containing 120 masks per box and 1 box of masks containing 100 masks, for a total of 64,180 counterfeit masks.  These masks were located on seven pallets (the "Defendant Asset").

30. Stamford Health had already paid Q2 $317,340.00 for the Defendant Asset at the time of seizure.  Stamford Health has not been reimbursed for the cost of the counterfeit masks.

31. On March 15, 2021, Stamford Health signed a "Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise," disclaiming any ownership in the Defendant Asset and waiving its rights in future proceedings regarding the Defendant Asset.

32. Despite the fact that the Q2 had been paid in full by Stamford Health for the Defendant Asset, Q2 now asserts an "ownership interest and a possessory interest" in the masks, as set forth in its administrative claim.

## CONCLUSION

33. Based on the above information, it is believed that the Defendant Asset constitutes trafficked counterfeit goods in violation of 18 U.S.C. § 2320 and is therefore subject to forfeiture pursuant to 18 U.S.C. § 2323.

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued for 535 boxes of counterfeit 3M 1860 and 1860S face masks; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

LEONARD C BOYLE,
ACTING UNITED STATES ATTORNEY

By: /S/ David C. Nelson
David C. Nelson (ct25640)
Assistant U.S. Attorney
157 Church Street, 24th Floor
New Haven, Connecticut 06510
Tel:   (203) 821-3700
Fax:   (203) 773-5373
David.C.Nelson@usdoj.gov

## DECLARATION

I am a Special Agent with the Homeland Security Investigations, United States Department of Homeland Security, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of June, 2021.

                                                /s/ Jeffrey Farragher
                                                JEFFREY FARRAGHER
                                                SPECIAL AGENT